Lewis R. **WINN**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14875.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 6, 1959.

Decided July 9, 1959.

Mr. John A. Shorter, Jr., Washington, D. C. (appointed by the District Court), with whom Mr. Roy M. Ellis, Washington, D. C., was on the brief, for appellant.

Mr. Walter J. Bonner, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, FAHY and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

Appellant, tried for first-degree murder, was convicted of manslaughter and sentenced to a term of four to fifteen years. He appeals from that judgment.

Before trial the United States Attorney moved for a mental examination of the accused, stating in his motion:

"The defendant was indicted for the crime of First Degree Murder on April 21, 1958. The charge specifically alleges that on March 9, 1958, the defendant threw a three day old child from a third story window, at 1806 R Street, N.W., within the District of Columbia. He was arrested shortly thereafter and began an exhibition of certain bizarre behavior. As a result of these actions he was sent to the District of Columbia General Hospi-

tal for a short examination and while there, for several days, he remained almost completely mute and would answer certain questions only by writing on a piece of paper. He refused to eat and apparently on several days had to be given intravenous infusions. This report came from Dr. James Foy, a medical officer in the department of psychiatry at that hospital.

"For these reasons it seems apparent that *a complete and thorough mental examination be conducted so that the rights and interests of all parties in this action be protected.*" [Emphasis supplied.]

 We said in Blunt v. United States, 1957, 100 U.S.App.D.C. 266, 275 note 23, 244 F.2d 355, 364 note 23, that the prosecutor who knows that the accused's mental state at the time of the crime will be the critical issue at the trial, has an obligation to see to it that any pre-trial mental examination of the accused that may be ordered be broad enough to cast light on that issue. And in Williams v. United States, 1957, 102 U.S.App.D.C. 51, 58, 250 F.2d 19, 26, we pointed out that this course is required not only to protect the rights of the accused, but also to protect "society's great interest" in hospitalizing the accused, if his violent act sprang from mental disorder, so that he would not be released— as he would be after completion of a prison sentence—without medical assurance that he is not likely to be dangerous to himself or others in the reasonably foreseeable future. See also Douglas v. United States, 1956, 99 U.S.App.D.C. 232, 240, note 12, 239 F.2d 52, 60, note 12. It was these rights and interests which the prosecutor commendably sought to protect in the pre-trial motion which he filed here.

But the District Court's order upon the motion required only such examination as was necessary to permit formulation of an "opinion \* \* \* as to whether the defendant is presently of unsound mind or mentally incompetent so as to be unable to understand the pro-

ceedings against him or properly to assist in his own defense." Why the order was thus restricted does not appear.

It is true that D.C.Code § 24–301 (Supp. VII, 1959) provides only for an examination limited to trial competency. But nothing in that statute nor anywhere else in the law prevents the court, in a case where it is obvious that the trial will revolve about the issue of the accused's mental state at the time of the crime, from ordering such examinations as will produce the evidence required to determine that issue—particularly where, as here, the accused is without the financial and intellectual resources to obtain this evidence on his own.

▮ There is a vast difference between that mental state which permits an accused to be tried and that which permits him to be held responsible for a crime. Lyles v. United States, 1957, 103 U.S.App.D.C. 22, 254 F.2d 725, certiorari denied 1958, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067. The nature and extent of the psychiatric evidence required for a proper determination of the issue of responsibility has been described in Carter v. United States, 1957, 102 U.S.App. D.C. 227, 252 F.2d 608. "[E]xaminations, made for the purpose of determining his competency to stand trial * * * require less than examinations designed to determine sanity for the purpose of criminal responsibility." Blunt v. United States, 100 U.S.App.D.C. at page 275 note 23, 244 F.2d at page 364 note 23. It is not to be assumed, therefore, that a psychiatrist who has been ordered to prepare an opinion as to a man's trial competency will conduct the type of examination which is necessary to provide the trier of the facts with the information essential for a proper determination of criminal responsibility. In addition to the psychological and neurological tests which may be indicated, that determination requires adequate knowledge and a proper expert evaluation of the accused's personal history and the circumstances surrounding the crime. "Opinion evidence, to be of any value, should be based either upon admitted facts or upon facts, within the knowledge of the witness, disclosed in the record. Opinion evidence that does not appear to be based upon disclosed facts is of little or no value." Balaban & Katz Corp. v. Commissioner of Internal Revenue, 7 Cir., 1929, 30 F.2d 807, 808; Blunt v. United States, 100 U.S.App.D.C. at page 275, 244 F.2d at page 364; Giant Food Stores, Inc. v. Fine, —— U.S.App.D.C. ——, 269 F.2d 542.

We conclude that the "complete and thorough" type of examination required for a proper determination of the issue of responsibility was never made because it had not been ordered, as requested in the prosecutor's pre-trial motion. Accordingly, the judgment is reversed and the case is remanded for a new trial.

So ordered.