**Roger T. BROWN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 4472.**

District of Columbia Court of Appeals.

Argued April 22, 1968.

Decided July 24, 1968.

**488**

Thomas P. Abbott, Alexandria, Va., appointed by this court, for appellant.

James E. Kelley, Jr., Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and Franklin S. Bonem, Asst. U. S. Attys., were on the brief, for appellee.

Before MYERS, KELLY and FICKLING, Associate Judges.

KELLY, Associate Judge.

After conviction by a jury on January 12, 1967, of petit larceny and unlawful entry appellant's pro se motion for new trial was granted and new counsel appointed on January 18. On the morning of February 8, 1967, the day before the scheduled new trial, counsel moved the Criminal Assignment judge for a continuance of at least a month on the ground that "information has been supplied me over the weekend that there are new facts to bring into this case." The motion was denied. Later that day counsel renewed the motion before the same judge, with the additional explanation that in his opinion there was a good possibility that appellant was insane or mentally irresponsible at the time of the alleged offense. To support this opinion he told the court he had spoken with a psychiatrist who had agreed to interview appellant under the Criminal Justice Act [1] and be his expert witness in the case. At the same time counsel declined to present a factual basis for his

---

1. 18 U.S.C. § 3006A (e). Services Other Than Counsel.—Counsel for a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in his case may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. * * *

opinion lest he disclose his defense to the prosecution. The motion was again denied.

The following morning a continuance on the same ground was requested of the trial judge. As a matter of new evidence counsel represented to the court that the previous evening he had spoken to a priest studying for his master's degree in social psychology at Catholic University who had confirmed the possibility that appellant, whom he knew, was suffering from a mental defect or disease at the time of the offense. Once again the motion was denied.

At trial the unlawful entry charge was dismissed at the close of the Government's case and thereafter the jury found appellant guilty of petit larceny. After verdict, counsel moved for a new trial on the ground that the lack of expert testimony had precluded an adequate presentation of an insanity defense. Prior to a hearing on the motion the trial judge ordered appellant examined by a staff psychiatrist of the Legal Psychiatric Services, who reported that

> As a result of that examination it is my opinion that the defendant has a long-standing character disorder of the passive aggressive type but I find no direct connection between this and the alleged offense.

The motion for new trial was then heard and denied. Appellant was sentenced to nine months' imprisonment and has now served that sentence.[2] This appeal charges reversible error in the allegedly systematic denials of the motions for continuance.

Appellant's competency to stand trial was not questioned, nor was it disputed that he took without permission an inexpensive record player from the sales area of the dead parcel post branch of the Post Office. Insanity was the sole defense, and it developed at trial that the alleged insanity was of a temporary nature lasting for a period of approximately 48 hours immediately prior to and including the time of the alleged offense. The testimony of lay witnesses was to the effect that appellant was a sensitive person who became deeply depressed and detached upon the death of his father several days before the crime, just as he had five years before at the death of his mother. The night of the father's death appellant's sister told him that unless he could get some money for burial, the body would either be cremated or used for experimental purposes at medical school. She told appellant this not because she knew it was so, but because she thought it might move him, as the oldest child, to take the responsibility of providing funds for burial.[3] Thereafter, according to the testimony, appellant was either unable to hold a rational conversation or would not speak at all, and while his sister was similarly upset, it was her opinion that appellant was not in his right mind "because he couldn't get himself together." To appellant's wife, who described his reaction in identical terms, it was in her words more like a "mental block" than a mental disease. On this testimony the issue of insanity was submitted to the jury.[4]

■ We think it settled that the grant or denial of a continuance is a matter within the sound discretion of the court and is not subject to review absent clear abuse. Gilmore v. United States, 106 U.S.App.D.C. 344, 348–349, 273 F.2d 79, 83–84 (1959), wherein it was stated that

> A party seeking review of a refusal of a continuance must make a showing

2. We do not dismiss the appeal as moot because after conviction in this and in another case, in which he was on bond at the time of this offense, appellant's parole was revoked. Sibron v. State, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 917 (decided June 10, 1968.)

3. The sister then went down "and asked the Government to bury him and they took care of it", but she did not bother to call her brother and tell him.

4. The priest did not testify because his superior in the Dominican Order forbade his coming to court. A forthwith subpoena issued, but the witness was not to be found.

that the continuance is reasonably necessary for a just determination of the cause. Such a showing is made by offering to prove what evidence, if any, will be gained by the grant, and what relevance it has to the charge. Neufield v. United States, 1941, 73 App.D.C. 174, 118 F.2d 375. * * *

The question is whether there was such a clear abuse of discretion in this case.

 We may grant appellant's claim that the motions for continuance should have been treated as motions for a mental examination expressly made under D.C. Code 1967, § 24–301(a),[5] as well as for appointment of an independent expert under the Criminal Justice Act, and agree that on adequate averment the trial court has a duty to assist a defendant to develop an insanity defense. Cannady v. United States, 122 U.S.App.D.C. 120, 123, 351 F.2d 817, 820 (1965); Brown v. United States, 118 U.S.App.D.C. 76, 77, 331 F.2d 822, 823 (1964). We may also grant that despite the provisions of GS Criminal Rule 14 (III) (c) [6] a continuance should be allowed upon a clear showing of the need for a mental examination, Mitchell v. United States, 114 U.S.App.D.C. 353, 357–359, n. 13, 316 F.2d 354, 358–360, n. 13 (1963), or for the appointment of an independent psychiatrist. Cf. Jacobs v. United States, 350 F.2d 571 (4th Cir. 1965). But such a showing is lacking here because of counsel's repeated failure or refusal to present to the court a factual basis for his conclusion that appellant possibly suffered from a mental disease or defect at the time of the alleged crime. A motion for mental examination is made upon *adequate averment*, not upon counsel's belief, however sincere, that certain undisclosed facts lead him, or a psychiatrist, or a social psychologist, to suspect an examination is required.[7] An intelligent judgment on the question of whether a mental examination is needed in a given case must be

5. "Whenever a person is arrested, indicted, charged by information, or is charged in the juvenile court of the District of Columbia, for or with an offense and, prior to the imposition of sentence or prior to the expiration of any period of probation, it shall appear to the court from the court's own observations, or from prima facie evidence submitted to the court, that the accused is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court may order the accused committed to the District of Columbia General Hospital or other mental hospital designated by the court, for such reasonable period as the court may determine for examination and observation and for care and treatment if such is necessary by the psychiatric staff of said hospital. * * *"

6. "(c) CONTINUANCES.
 (1) In any case pending in the Criminal Assignment Branch, or in any Criminal Trial Court, only the Criminal Assignment Judge may grant a continuance prior to the start of the trial.
 (2) Except in extraordinary and unforeseen circumstances no continuances shall be granted in any case unless requested at least two days prior to the date to which the case was previously continued. If both parties timely agree to the requested continuance, it shall be necessary for only one party to appear to request the continuance, unless the Criminal Assignment Judge in any particular case shall require the appearance of both parties. * * *"
 This rule had been in effect only two days and counsel would have made a timely motion the day before except that he was snowbound.

7. While the legislative history of the Criminal Justice Act of 1964 indicates that application and proceedings for obtaining the services of experts under the Act are to be ex parte so as to avoid the possibility that an open hearing might cause a defendant to reveal his defense, H.R.Rep. No. 864, 88th Cong., 2d Sess. (1963) U.S.Code Congressional and Administrative News, p. 2990, we do not think that any right to have such proceedings be ex parte need conflict with the requirement to specify a factual basis for a requested continuance and/or a mental examination. We see no reason why counsel may not in his motion for continuance offer to make an ex parte proffer of facts showing the need for a mental examination and for the appointment of an independent psychiatrist under the Criminal Justice Act.

based upon facts which suggest to the court the accused's mental instability, and no court can exercise its discretion in this regard without such a factual predicate.[8] Absent adequate averments calling for the exercise of discretion there can be no abuse of discretion.

■ Mindful as we are of the court's obligation, and that of counsel to afford an accused effective assistance in presenting all defenses urged in good faith, we are unable to say that the denials of appellant's motions for continuance deprived him of substantial rights or of a fair trial. We find no error and the conviction is

Affirmed.

8. Cf. Higgins v. United States, U.S.App.D.C. (No. 20,920, decided June 28, 1968).